**LAW OFFICES OF BUCHSBAUM & HAAG, LLP**
BRENT S. BUCHSBAUM, CSBN: 194816
*brent@buchsbaumhaag.com*
LAUREL N. HAAG, CSBN: 211279
*laurel@buchsbaumhaag.com*
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: (562)733-2498; Fax: (562)628-5501

Attorneys for Plaintiffs,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GHASSAN ABDELLATIF, individually, and as a representative of other aggrieved employees,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>MOLINA HEALTHCARE INC., a Corporation; and DOES 1 through 250, inclusive,<br><br>　　　　Defendants. | Case No.: 2:23-cv-09145-WLH-JPR<br><br>*The Honorable Wesley L. Hsu*<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　December 19, 2025<br>Time:　　1:30 p.m.<br>Ctrm.:　　9B |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE THAT ON December 19, 2025,** in the United

3    States District Court for the Central District of California, Courtroom 9B, before

4    District Judge Wesley C. Hsu, Plaintiff, Ghassan Abdellatif, (Plaintiff) will move

5    for final approval of the proposed Class Settlement with Defendant, Molina

6    Healthcare, Inc., ("Defendant"). This motion is unopposed and is based on the

7    Class Action Settlement Agreement ("Agreement") between the parties, which is

8    filed concurrently with this motion.

9         The motion will be based on this Notice of Motion and the attached

10   Memorandum of Points and Authorities filed herewith, the Declaration of Brent

11   Buchsbaum, the Declaration of Ghassan Abdellatif, the Declaration of Madely

12   Nava, the argument of counsel and upon such other material contained in the file

13   and pleadings of this action.

16                         Respectfully Submitted,

17   Dated: November 21, 2025    LAW OFFICES OF BUCHSBAUM & HAAG

18                         A Limited Liability Partnership

20                         */s/ Brent S. Buchsbaum*

21                   By_____

22                    Brent S. Buchsbaum, Attorneys for Plaintiff

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 2

II. FACTS AND PROCEDURE ...................................................................... 3

    A. Plaintiff Filed a Putative Class Action Alleging Labor Code Violations ................................................................................................................... 3

III. LEGAL CLAIMS .................................................................................... 5

    A. Unpaid Overtime ................................................................................ 5

    B. Unpaid Meal and Rest Period Premiums ........................................... 5

    C. Paystub Violations .............................................................................. 6

    D. Labor Code §2802 Claim ................................................................... 8

    E. Labor Code §2802 Claim ...................................................................

IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 10

    A. The Settlement is Fair, Adequate and Reasonable ............................ 10

        1.  The Strength of the Case ............................................................ 10

        2.  Risk, Expense, and Complexity of Further Litigation ................ 11

        3.  Risk of Maintaining Class Action Status .................................... 11

        4.  Settlement Amount Provides Realistic Value for Claims ............. 12

        5.  Discovery Completed and the Status of Proceedings ................. 12

        6.  The Experience and Views of Counsel ....................................... 12

        7.  The Class Notice and the Reaction of the Class Members ......... 12

    B. The Final Approval Standard is Met .................................................. 16

        1. The Settlement is Within the Range of Possible Approval ......... 16

        2. The Settlement Resulted from Arm's-Length Negotiations ......... 17

        3. The Settlement is Devoid of Obvious Deficiencies ..................... 13

V. THE SETTLEMENT MERITS CERTIFICATION ..................................... 18

    A. Rule 23(a)(1) Numerosity Is Satisfied ............................................... 18

    B. Rule 23(a)(2) Commonality Is Satisfied ............................................ 18

    C.  Rule 23(a)(3) Typicality Is Satisfied ................................................ 18

BUCHSBAUM & HAAG, LLP
100 W. OCEAN BLVD., SUITE 1200
LONG BEACH, CALIFORNIA 90802

D.  Rule 23(a)(4) Adequacy Is Satisfied............................................... 19

E.  Rule 23(b)(3) Predominance Is Satisfied ................................... 20

VI. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS ........ 20

VII.  CONCLUSION........................................................................... 23

BUCHSBAUM & HAAG, LLP
100 W. OCEAN BLVD., SUITE 1200
LONG BEACH, CALIFORNIA 90802

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases:</u>

*Amchem v. Windsor*,

     521 U.S. 591, 623 (1991)………..……………………..……………..20

*Boeing Co. v. Van Gemert*

     444 US 472, 478 (1980). ………..………………………..……………..21

*Churchill Vill., LLC v. Gen Electric*,

     361 F.3d 566, 575 (9th Cir. 2004)………………………………………...20

*Eisen v. Carlisle & Jacqueline*,

     417 US 156 (1974)…………………………………………………………...20

*Ferra v. Loews Hollywood Hotel*, LLC,

     11 Cal.5th 858 (2021)………………………………………………………..5

*Gribble v. Cool Transports*,

     2008 WL 5281665 *9 (C.D. Cal. December 15, 2008)……………..……..13

*Hanlon v. Chrysler Corp.*,

     150 F.3d 1011, 1020 (9th Cir. 1998)…...................................…………...18

*Hanlon v. Chrysler Corp.*,

     150 F.3d 1020 (9th Cir. 1998)……………………………………………......19

*Hanlon v. Chrysler Corp.*,

     150 F.3d 1022 (9th Cir. 1998)………...……………………………………….20

*Ikonen v. Hartz Moutain Corp.*,

     122 F.R.D 258, 262 (S.D. Cal. 1988)…...............................……………18

*In re First Capital Holdings Corp.*,

     1992 WL 22631 at *2 (C.D. Cal. June 10, 1992)...…………………………17

*In re Pacific Enterprises Sec. Litig.*,

     47 F.3d 373, 378 (9th Cir. 1995). …………………………………..…..12

*In re Portal Software, Inc.*,

     2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) …………….....11

BUCHSBAUM & HAAG, LLP
100 W. OCEAN BLVD., SUITE 1200
LONG BEACH, CALIFORNIA 90802

*Leyva v. Medline Indus. Inc.*,
    716 F3d 510, 515 (9th Cir. 2013) ……………….…….…...…...…….…19

*Lopez v. Friant & Associates,*
    15 Cal.App.5th (2017) …………………………...………..…..….…7

*National Rural Tele. Coop. v. DIRECTTV, Inc.,*
    221 F.R.D 523, 526 (C.D. Cal. 2004) ……….….…………………...…11

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948, 963 (9th Cir. 2003) …………….……………….....…10

*Staton v. Boeng Co.*
    327 F.3d 938, 964 (9th Cir. 2003) …………….……………….20, 21

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043, 1048 (9th Cir. 2002) ……………………………….21

BUCHSBAUM & HAAG, LLP
100 W. OCEAN BLVD., SUITE 1200
LONG BEACH, CALIFORNIA 90802

TABLE OF CONTENTS – TABLE OF AUTHORITIES

BUCHSBAUM & HAAG, LLP
100 W. OCEAN BLVD., SUITE 1200
LONG BEACH, CALIFORNIA 90802

**Statutes:**

Business & Professions Code §§ 17200……………………………………………..3

Cal. Labor Code § 510……………………………………………………………….3

Cal. Labor Code §512(a) …………………………………………………………….3

Cal. Labor Code §§ 201-203…………………………………………………………3

Cal. Labor Code §203………………………………………………………………..9

Cal. Labor Code §226………………………………………………………………..7

Cal. Labor Code § 226.7…………………………………………………………….3

Cal. Labor Code §§ 226(a)…………………………………………………………..3

Cal. Labor Code §1174……………………………………………………………...3

Cal. Labor Code § 2802……………………………………………………….3, 4, 8

**Federal Statutes**

Federal Rule of Civil Procedure 23(e)(2)…..………………………………………10

Federal Rule of Civil Procedure 23(h)…..…………………………………………20

**Secondary Authorities:**

Manual for Complex Litigation (3d ed. 1995)….…………………………………..16

Newberg et al., *Newberg on **Class Actions*** (4th ed. 2013) at § 11:24-25………..16

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff seeks final approval of a $1,800,000 class action settlement that provides significant monetary relief for 3,615 Class Members.  The key terms of the Class Action and PAGA Settlement Agreement[1] are as follows:

1)    Settlement Class Members:   all non-exempt California employees of Defendant during the Class Period (January 1, 2022 to April 2, 2025), as well as (b) all exempt California employees of Defendant during the Class Period (January 1, 2022 to April 2, 2025) as to the expense reimbursement claim only.

(2)    A Gross Fund Value of $1,800,000 that includes:

(a)    The Net Fund Value (i.e., the Gross Fund Value minus Attorneys' Fees and Costs, payroll (employee only) taxes, the Claims Administration Fee, the LWDA Payment, and the Class Representative Service Award).

(b)    $600,000 in Attorneys' Fees and $17,372.32 in actual costs to Class Counsel.

(c)    $27,250 in a Claims Administration Fee to Claims Administrator, Apex Class Action Administration.

(d)    $60,000 PAGA payment pursuant to Private Attorneys General Act (75% of which, or $45,000, goes to the LWDA, and the remaining 25%, or $15,000, going to the Net Fund).

(e)    $10,000 Service Award to the class representative.

---

[1]    Hereinafter, "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1
2
3

The Settlement is fair, reasonable, and adequate—and meets the conditions for approval under Federal law. Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement Agreement.

4
5

## II.    FACTS AND PROCEDURE

6
7

### A.    Plaintiff Filed a Putative Class Action Alleging Labor Code Violations

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

On September 25, 2023, Abdellatif filed a Class Action Complaint (the "Complaint") against MOLINA in the Superior Court of the State of California for the County of Los Angeles, captioned ***Ghassan Abdellatif v. Molina Healthcare, Inc.***, and Does 1 through 250, inclusive, Case No. 23STCV23076 (the "State Court Action"), which sets forth the following seven (7) causes of action: (1) Violation of California Labor Code § 510 ("Unpaid Overtime and Minimum Wages"); (2) Violation of California Labor Code §§ 226(a) and 1174 ("Non-compliant Wage Statements"); (3) Violation of California Labor Code §§ 201-203 ("Failure to Pay All Wages and on a Timely Basis"); (4) Violation of Labor Code §§ 226.7, 512(a) ("Unpaid Meal Period Premiums"); (5) Violation of Labor Code § 226.7 ("Unpaid Rest Period Premiums"); (6) Violation of Labor Code § 2802 ("Unreimbursed Business Expenses"); (7) Violation of California Business & Professions Code §§ 17200, et. seq. ("Unfair Competition"). On October 25, 2023, Abdellatif filed a First Amended Class Action Complaint ("FAC"). The FAC alleges the same causes of action but adds some additional factual allegations. On April 25, 2025, Plaintiff filed a Second Amended Complaint, which added a claim for penalties under the Private Attorney General Act ("PAGA") and a claim for expense reimbursement for exempt California employees. The Second Amended Complaint is the operative complaint in the Action (the "Operative Complaint."). Molina denies the

28

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

allegations in the Operative Complaint, denies any failure to comply with the laws identified in in the Operative Complaint and denies any and all liability for the causes of action alleged.

This proposed settlement came to fruition only after substantial legal research and analysis, extensive investigation, the exchange and analysis of a significant amount of sampling and class data, the hiring of an expert statistician, and extensive arm's-length settlement negotiations at a private mediation with Michael Loeb, an experienced and well-regarded wage and hour class action mediator. (Buchsbaum Decl., ¶10).

As stated, if the Settlement is approved, Defendant will pay a Common Fund settlement of $1,800,000. After deductions for court-approved incentive payments to the named Plaintiff, settlement administration costs, attorneys' fees and costs, and payment to the Labor & Workforce Development Agency ("LWDA") for civil penalties under the Labor Code Private Attorneys General Act ("PAGA"), the Net Common Fund shall be distributed to all Settlement Class members, based on their number of workweeks during the relevant time periods. (Buchsbaum Decl., ¶11).  However, because the exempt employees are only class members as to the reimbursement of business expenses claim (Labor Code §2802), the class portion of the Net Fund will be distributed 75% to the non-exempt employees and 25% to the exempt employees.  See Settlement Agreement, at ¶3.2.4

This settlement provides a substantial recovery on Defendant's alleged wage and hour violations and disputed derivative penalty claims. Based on the litigation risks involved, Plaintiff submits that the proposed settlement is well within the range of reasonableness required for approval. Moreover, the settlement agreement and notice distribution plan were the products of an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

obtaining class certification, and arm's-length settlement negotiations by experienced employment counsel. (Buchsbaum Decl., ¶12).

## III.    LEGAL CLAIMS

### A.    Unpaid Overtime

The majority of Molina's remote workers were paid a combination of hourly pay, commission pay, and in some cases bilingual differential pay.  All of those earnings have to be taken into account when calculating overtime, but Plaintiff's analysis showed that was not always done, particularly early in the class period.  Our expert reviewed a 25% sample of the class payroll and time records, and determined that there was approximately $44,779 in unpaid overtime wages, plus an associated $255,700 in PAGA penalties.  The PAGA penalties, however, are subject to considerable reduction by the Court, and we concluded that if plaintiff prevailed, it was highly likely that the derivative PAGA claims would be diminished substantially.  As a result, we valued the PAGA claim for unpaid overtime at no more than $50,000.

### B.    Unpaid Meal and Rest Period Premiums

The Defendant had the same problem, particularly early in the class period, with calculating meal period premiums correctly.  Under *Ferra v. Loews Hollywood Hotel*, *LLC,* 11 Cal.5th 858 (2021), employers are required to pay meal period premiums at the "regular rate of pay" rather than at the "base" or hourly rate of pay.  Initially, Molina was allegedly paying the premium incorrectly. This error was ultimately cleaned up for the most part, but our expert still found $20,555 in damages extrapolated to the class, plus an associated $127,100 in PAGA penalties.

There is also the issue of late, missed and short meal periods.  The nature of the work remote workers were performing did not always lend itself to regular

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

meal periods. For example, Plaintiff was sometimes on the phone for long periods of time with potential customers, and could not simply hang up and go to lunch. As a result, he had a significant number of meal period violations. Molina, to its credit, actually paid a lot of meal period premiums, but in many cases the records also reveal no premium being paid. When you look at the delta between meal period violations and meal premiums paid, you get $538,656 in unpaid meal period premiums and an associated $567,300 in PAGA penalties. However, we had to significantly discount that theoretical exposure because proving these meal periods weren't waived was likely to be extraordinarily difficult, particularly given that these employees worked remotely in their homes. Additionally, an investigation into the reasons these meals were late, missed or short was likely to lead to individual inquiries and lack of memory from class members, which would jeopardize certification. As a result, we valued the meal period claim at approximately $400,000 for settlement purposes.

We attached essentially no value to the rest period claim. We reviewed the rest period policies, which were all compliant with California law. Proving that class members could not take 10-minute rest periods working from home was likely to be a nearly insurmountable challenge.

### C.    Paystub Violations

In the course of correcting some of the regular rate issues, Defendant began issuing strange paystubs that sometimes had the amount paid correct while presenting the information to the employee inaccurately. For example, at first blush, when we looked at the paystub for July 17, 2022 to July 30, 2022, it looked like the meal period premium continued to be paid at the wrong rate. That is, the meal period premium is noted as being paid at the base rate of $23.20 rather than the "regular rate of pay." However, when you do the math and multiply the base rate of $23.20 by the number of violations (2) you get $46.40. However, the

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

amount paid is $49.90. So here, in contrast to the earlier paystub, commission or differential rates are being factored into the meal period premium, but the rate of pay is simply listed wrong. This is a problem, because Labor Code §226(a) states the following:

"An employer, semimonthly or at the time of each payment of wages, shall furnish to their employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an ***accurate itemized statement*** in writing showing. . . ***(9) all applicable hourly rates*** in effect during the pay period. . ."

One of the issues is that Molina apparently does its payroll in-house. There are few payroll organizations, such as ADP, who present the wrong rates of pay as a matter of course, even if somehow the correct amount of pay is ultimately arrived at in some cases. Although recent amendments to PAGA require the showing of damages for paystub violations like these, the PAGA filing with the LWDA in this case pre-dates the amendments. As a result, the holding of ***Lopez v. Friant & Associates***, 15 Cal.App.5th (2017) applies, which means PAGA penalties are collectible for technical violations of the statute.

Our expert calculated exposure for the paystub claim at $1,167,850, plus an additional $799,500 in PAGA penalties. That being said, there was a significant risk that the Court would find no statutory liability at all, since while the wages rates were inaccurately reported, the amount of pay was correct. That presents a potential problem for the prosecution of the claim, since Labor Code §226 requires some evidence that the inaccuracy in the paystub caused some tangible damage. While the PAGA claim was less vulnerable to this defense, the likelihood of a court seriously reducing the maximum penalty seemed very high. As a result, we valued the paystub violations, for settlement purposes, at approximately $200,000.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

### D.    Labor Code §2802 Claim

The Defendant's Remote Work Policy mandates specific internet requirements to carry out the work:

**"Connectivity: Remote work location must have high speed internet connection of at least 100 Mbps download and 20 Mbps upload."**

The average price of internet plans in the U.S. is $92.22 per month, according to an Allconnect analysis of more than 250 plans from the country's top internet providers. Some plans with lower connectivity speeds can be purchased for cheaper, so the median cost is a bit lower. According to Consumer Reports about half of all households pay between $60 and $90 per month.  US News and World Report clock the average cost at around $89 per month.  A Consumer Reports survey noted that "over a quarter of Americans (27%) who have a broadband service at their home say it's somewhat or very difficult to afford their monthly broadband costs."

From Plaintiff's perspective, Molina's decision to pay a Remote Stipend of $11.50 per pay period, and to *tax that amount,* cumulatively resulted in an extraordinary shift of necessary business expenses to the employees who work for Molina.  Meanwhile, Molina recouped enormous savings by eliminating the need for office space and all its attendant costs (including internet).  The employees, like plaintiff, had to isolate in rooms, to the consternation of family members, while they carried out an endless series of phone conversations throughout the day, using their own home internet, electricity and private space.  Indeed, the Remote Policy states that the home environment must **"allow for adherence to Molina's privacy, security and compliance policies, which requires a workspace that restricts access by non-Molina employees."**  In effect, this meant that a significant portion of Plaintiff's home was off limits to his family for

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

much of the week. This $11.50 a pay period idea, netting out to around $7, was simply inadequate from our standpoint. Plaintiff's internet and electricity bill, for example, was far more than the stipend.

We assumed $50 per pay period as a reasonable reimbursement for the home office expense (including space, high speed internet, electricity, gas) and that extrapolates out to $7,598,000 in unreimbursed business expenses for the entire class, of which $4,353,000 was associated with exempt employees, plus another $5,559,900 in PAGA penalties.

Molina, however, cited different consumer reporting studies that found the average price of high speed internet was closer to $25, which was roughly the amount that each class member was paid, whether they were exempt or non-exempt. Molina further argued that the home internet was not just used for business, but rather was used by the class members for their personal use as well, particularly during the weekends and evening hours. And further, Molina reasonably argued that determining how much each class member was owed, which would involve examining their job duties, the type of plan they had for home internet, and the degree of personal use, would have complicated the certification of this as a class action to a substantial degree.

As a result of these risks, we valued reimbursement claims, including the PAGA component, at approximately $900,000, and roughly evenly between the non-exempt and exempt class members.

### E.    Waiting Time Penalties

Given that the Defendant treated reimbursements as wages, and a significant number of employees were impacted by regular rate miscalculations and meal period premiums, the waiting time penalties due to former employees amounted to $3,004,026, plus an additional $30,200 in PAGA penalties. However, a Labor Code §203 violation requires willfulness and is subject to a "good faith"

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

defense.    Here, the Defendant could credibly argue that it believed the
reimbursement for home internet was reasonable rather than an underpayment,
and that the regular rate miscalculations were also the result of a good faith
mistake to the extent they could be proved.   As a result, we viewed the value of
this claim, for settlement purposes, at approximately $200,000.

## IV.   THE SETTLEMENT MERITS FINAL APPROVAL

### A.    The Settlement is Fair, Adequate and Reasonable

To receive judicial approval, a proposed class action settlement must be
"fair, reasonable, and adequate." *See* Fed. Rule of Civil Proc. 23(e)(2). In making
this determination, this Court may consider the following factors: (1) the strength
of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of
further litigation; (3) the risk of maintaining class action status throughout trial;
(4) the amount offered in settlement; (5) the extent of discovery completed and the
stage of the proceedings; (6) the experience and views of counsel; (7) the presence
of a governmental participant; and (8) the reaction of the class members to the
proposed settlement (which is to be evaluated at the final approval hearing, after
the class members have received notice). *See Rodriguez v. West Publishing
Corp.,* 563 F.3d 948, 963 (9th Cir. 2003) Plaintiff addresses each relevant factor
below.

#### 1.    The Strength of the Case

Although he steadfastly maintains that his claims are meritorious, Plaintiff
acknowledges that Defendant possessed several defenses to both liability and class
certification, such that prevailing on either was uncertain.  (See Buchsbaum Decl.,
¶27).  As explained earlier in this brief, Defendant presented multiple defenses to
each of Plaintiff's underlying claims, both on the merits and with respect to class
certification. As a result, Plaintiff's ability to certify and prevail on his claims was

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

far from guaranteed. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.* 221 F.R.D 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Thus, this factor supports preliminary approval.

### 2. Risk, Expense, and Complexity of Further Litigation

The parties engaged in a significant amount of investigation, informal discovery, and class-wide data analysis, and also reviewed a substantial number of payroll records, time records, and multiple versions of employee handbooks. (*See* Buchsbaum Decl., ¶32). Defendant may have filed a Motion for Summary Judgment based on several of the issues. As a result, the parties would incur considerably more attorneys' fees and costs through trial. This settlement avoids those risks and the accompanying expense. See *In re Portal Software, Inc.* 2007 WL 4171201 at * 3 (N.D. Cal. November 26, 2017) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement"). Thus, this factor favors preliminary approval.

### 3. Risk of Maintaining Class Action Status

Plaintiff had not yet filed his motion for class certification when the parties reached the proposed settlement. (Buchsbaum Decl., ¶36). Absent settlement, there was a risk that there would not be a certified class at the time of trial, and that the putative class members would not recover anything. *Id*. As discussed herein, Plaintiff believes there was substantial risk with certifying all of the proposed classes. Thus, this factor also supports preliminary approval.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

### 4.    Settlement Amount Provides Realistic Value for Claims

This proposed settlement provides a substantial monetary recovery for Settlement Class members in face of disputed claims. As detailed, Plaintiff believes this settlement represents a good recovery in light of the substantial risks that the key claims were barred by federal preemption or would not be certified.

While the gross exposure was over $13 million, the risk that certification to some or all of the claims would be denied was substantial.  Similarly, there was significant risk that the Court would dismiss some of the claims on the merits for the reasons articulated in this Motion.  As a result, the $1.8 million settlement takes those risks into consideration and is a reasonable settlement given the risks involved.   (Buchsbaum Decl., ¶31).

### 5.    Discovery Completed and the Status of Proceedings

The parties engaged in a significant amount of investigation, informal class-wide discovery, and analysis prior to reaching the proposed settlement. (*See* Buchsbaum Decl., ¶32). As stated, Defendant provided time and pay records of a 25% sample of the class, and provided detailed data regarding total Settlement Class members, pay period information, average hourly rates, and other relevant data for the class. *Id.*  It was only after this exchange of data and information that the parties participated in a full-day mediation and ultimately reached the proposed settlement by way of a mediated settlement. *Id.* Thus, this factor supports preliminary approval. (Buchsbaum Decl., ¶32).

### 6.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." ***In re Pacific Enterprises Sec. Litig.***, 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff is represented by experienced wage and hour class action counsel

who collectively have more than two decades of wage and hour class action experience, and who have successfully served as lead counsel in certifying and settling numerous class actions both in the federal and state courts of California. (*See* Buchsbaum Decl., ¶¶ 3-7); This factor supports preliminary approval. *See, e.g., **Gribble v. Cool Transports*** 2008 WL 5281665 *9 (C.D. Cal. December 15, 2008 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 7. The Class Notice and the Reaction of the Class Members

As of today's date, the claims administrator, Apex, has not received any objections to the settlement. There have been zero work week disputes and only 2 requests for exclusion, meaning that 99.94% of the class members are participating in the settlement. We note that the deadline for class members to submit a written objection is November 24, 2025, as a result we will be filing an amended Declaration from the claim administration prior to the Hearing to confirm this information.

Further, as discussed below, the Class Notice was very effective in proving actual notification to the overwhelming number of class members:

On August 22, 2025, Counsel for the Plaintiff provided Apex with the Court-approved content for the Notice Packet. Apex then generated a draft of the formatted Notice Packet, which received approval from the Parties' Counsel before being mailed. Nava Decl., at ¶4

On September 11, 2025, Counsel for the Defendants provided Apex with the class data file, comprising the names, social security numbers, last known mailing addresses, and the total number of relevant workweeks worked by each Settlement Class Member. The data file was successfully uploaded to our database, where it underwent a thorough review to identify any duplicates or potential inconsistencies. The Class Data consisted of a total of 3,615 individuals. Nava Decl., at ¶5.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1
2
3
4
5
6
7
8
9
10
11

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In preparation for the mailing process, all 3,615 names and addresses listed in the Class Data underwent verification and updating against the National Change of Address (NCOA) database maintained by the United States Postal Service (USPS). The purpose of this step was to ensure the accuracy and validity of the Settlement Class Members' mailing addresses before sending out the Notice Packet. The NCOA database contains records of requested address changes submitted to the USPS. If an updated address was found in the NCOA database, it was utilized for the mailing of the Notice Packet. However, in cases where no updated address was found in the NCOA database, the original address provided by Counsel for Defendants was used for the mailing of the Notice Packet. Nava Decl., at ¶6.

On September 25, 2025, The Notice Packet was sent to all 3,615 individuals listed in the Class Data using U.S First Class Mail. A copy of the mailed Notice Packet is attached hereto to the Nava Declaration as Exhibit A. Nava Decl., at ¶7

As of today's date, Apex has received 67 returned Notice Packets as undeliverable. Apex conducted a computerized skip trace on the 67 returned Notice Packets in order to acquire updated addresses for the purpose of re-mailing the Notice Packet. This skip trace effort resulted in obtaining 47 updated addresses, to which we promptly re-mailed the Notice Packets via U.S First Class Mail.  Nava Decl., at ¶8

As of the date of today's date, there have been 47 Notice Packets re-mailed as a result of Apex's skip-tracing efforts.  As of today, 20 Notice Packets have been considered undeliverable as no updated address was found despite conducting skip tracing.  Nava Decl., at ¶9-10.  As of today's date, Apex has received 2 requests for exclusion. The deadline for submitting a request for exclusion from the Settlement is November 24, 2025.  Nava Decl., at ¶11

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

1

2

3

As of today's date, Apex has not received any objections to the Settlement. The deadline for submitting a written objection to the Settlement is November 24, 2025. Nava Decl., at ¶12

4

5

As of today's date, Apex has not received any disputes from Class Members. The deadline for submitting a dispute is November 24, 2024.  Nava Decl., at ¶13.

6

7

8

As of today's date, Apex will report 3,613 Participating Class Members, constituting 99.94% of the total 3,615 Settlement Class Members. Nava Decl., at ¶14

9

10

In addition to the positive response of the class and the effectiveness of the mailing, the settlement payments convey a significant benefit to class members:

11

12

13

14

15

16

17

18

19

20

The total number of workweeks worked by Participating Class Members during the Class Period is 213,942 exempt workweeks and 184,750 non-exempt workweeks. The Net Settlement Amount available to Participating Class Members is estimated to be $1,082,750.00, of which $270,687.50 is allocated to Exempt Employees and $812,062.50 is allocated to Non-Exempt Employees. This amount was calculated by subtracting the requested attorneys' fees ($600,000.00), the amount requested for litigation costs and expenses ($20,000.00), the requested Class Representative Service Payment ($10,000.00), the requested Settlement Administration Costs ($27,250.00), and the PAGA Penalties ($60,000.00) from the Gross Settlement Amount ($1,800,000.00).  Nava Decl., at ¶15

21

22

23

24

25

26

The *highest* Individual Settlement Amount to a Participating Class Member is currently estimated to be approximately $738.44, the *average* Individual Settlement Amount is currently estimated to be approximately $299.52, and the *lowest* Individual Settlement Amount is currently estimated to be approximately $2.53. These amounts are subject to employee-side tax and withholdings.  Nava Decl., at ¶16

27

28

Pursuant to the Agreement, 25% of the PAGA Payment ($15,000.00) will be allocated to Aggrieved Employees regardless of whether they opt out of the class

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

settlement. Aggrieved Employees cannot opt out of the PAGA settlement. There are 3,205 Aggrieved Employees who worked a total of 132,405 pay periods during the PAGA Period.  Nava Decl., at ¶17

The *highest* individual PAGA share to an Aggrieved Employee is approximately $6.23, the *average* individual PAGA share is approximately $4.68, and the *lowest* individual PAGA share is approximately $0.11.  Nava Decl., at ¶18

Apex's comprehensive fees and costs for administering this Settlement, covering both incurred and anticipated expenses, amount to $27,250.00. Apex will proceed with additional tasks related to this matter, such as calculating settlement award payments, issuing and mailing settlement award checks, handling necessary tax filings and reporting on these payments, and any other tasks mutually agreed upon by the Parties or ordered by the Court for Apex to undertake.  Nava Decl., at ¶19.

### B.    The Final Approval Standard Is Met

The Court can grant final approval of the settlement and direct that notice be given if the proposed settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, and non-collusive negotiations; and (3) has no obvious deficiencies. *See Manual for Complex Litigation* (3d ed. 1995) at § 30.41; Newberg et al., *Newberg on Class Actions* (4th ed. 2013) at § 11:24-25. These criteria are met here.

### 1. The Settlement is Within the Range of Possible Approval

The proposed settlement reflects a substantial recovery in light of real litigation risks on both merits and certification. Plaintiff submits that the proposed settlement is within the range of possible approval, and that the class's positive response to the settlement weighs in favor of approval.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

**2. The Settlement Resulted from Arm's-Length Negotiations**

This proposed settlement is the result of extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See **In re First Capital Holdings Corp***. 1992 WL 22631 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

As discussed above, Plaintiff thoroughly vetted the claims at issue and conducted factual investigation and extensive legal research and analysis. *See* Buchsbaum Decl., ¶34. The parties reached this settlement only after mediating with Michaell Loeb, a well-respected mediator with extensive experience in mediating wage and hour class actions. *Id*. The parties each supplied Mr. Loeb with detailed mediation briefs outlining the strengths and weaknesses of each claim and defense. *Id*. As noted, the parties participated with Mr. Loeb in a full-day mediation guided by his expertise, which reflected what the mediator determined to be the fair settlement value of the case. *Id*. Even after the parties had come to an initial agreement, both sides further negotiated the finer points of the proposed settlement while drafting, revising, and ultimately mutually approving the long-form settlement agreement. *Id*.

**3. The Settlement is Devoid of Obvious Deficiencies**

If the Court preliminarily approves this settlement, Defendant will pay a Common Fund of $1,800,000.

The average payment to non-exempt Settlement Class members is estimated at $299.52.

The proposed incentive payment to Plaintiff of $10,000 is also reasonable given the time and effort he has devoted to the case and the reputational risk of being a class action representative.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

1

2    **V.    THE SETTLEMENT MERITS CERTIFICATION**

3         **A.    Rule 23(a)(1) Numerosity Is Satisfied**

4         Numerosity is satisfied because there are 3615 current and former non-

5    exempt employees in the proposed Settlement Class. See Settlement at ¶4.1; *see*

6    *also **Ikonen v. Hartz Moutain Corp**.* 122 F.R.D 258, 262 (S.D. Cal.

7    1988) (holding that classes of 40 or more members satisfy numerosity).

8

9         **B.    Rule 23(a)(2) Commonality Is Satisfied**

10        The Settlement Class satisfies commonality because there are common

11   questions of fact and law arising from Plaintiff's and the proposed Settlement

12   Class's employment with Defendant, such as Defendant's allegedly improper

13   payment of overtime and meal premiums and a uniform reimbursement policy that

14   did not fully account for the cost of home internet for job related use.  All of

15   which Plaintiff contends arise from a common core of facts, as discussed above.

16   See Abdellatif Declaration.

17

18        **C.    Rule 23(a)(3) Typicality Is Satisfied**

19        According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive

20   standards, representative claims are 'typical' if they are reasonably co-extensive

21   with those of absent class members." *See **Hanlon v. Chrysler Corp.*** 150 F.3d

22   1011, 1020 (9th Cir. 1998). Here, Plaintiff's claims are typical of those held by

23   other non-exempt employees. Plaintiff was employed by Defendant as hourly non-

24   exempt employees during the relevant time periods.  Plaintiff was subject to

25   Defendant's challenged regular rate miscalculations, meal and rest period policies,

26   paystub irregularities and expense reimbursement policy, which was uniform

27   amongst both exempt and non-exempt remote workers. *Id*. As a result, Plaintiff's

28

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT

claims stem from Defendant's wage and hour policies and practices, typicality is satisfied.

### D.   Rule 23(a)(4) Adequacy Is Satisfied

Plaintiff is also adequate as a class representative under Rule 23(a)(4). To satisfy this requirement, Plaintiff and his counsel must not have conflicts of interest with the proposed classes, and must vigorously prosecute the action on behalf of the classes. ***Hanlon, supra***, 150 F.3d at 1020. Here, there is no conflict of interest between Plaintiff and the proposed Settlement Class. As a non-exempt employee, Plaintiff pressed forward claims for unpaid wages, unpaid premium wage, and related penalties resulting from Defendant's allegedly unlawful wage and hour policies and practices on behalf of other non-exempt employees. As a recipient of the uniform $25 stipend, which was provided to both exempt and non-exempt employees, he is suitable as a class representative on this claim a swell. As detailed above, the proposed settlement reflects a substantial recovery of Settlement Class members' alleged damages. Given the relatively small amounts at issue per employee, Plaintiff asserts that it is unlikely that any class member, especially a current employee, would have pursued these claims against Defendant individually. *See, e.g., **Leyva v. Medline Indus. Inc**. 716 F3d 510, 515 (9th Cir. 2013)* ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication."). Finally, Plaintiff's counsel diligently litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the Settlement Class members.  As set forth in the concurrently filed declarations of Plaintiff's counsel, Plaintiff's counsel is adequate to represent the proposed Settlement Class given his qualifications, skills, and experience.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

### E.  Rule 23(b)(3) Predominance Is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1991). Because Plaintiff seeks certification for settlement purposes, trial manageability need not be considered. Id., at 620. As all Settlement Class members were allegedly deprived of wages due to Defendant's allegedly unlawful regular rate miscalculation, and meal and rest period policies and practices, the Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominate. *See Hanlon, supra*, 150 F.3d at 1022.  See Buchsbaum Decl., 41-44.

## VI.    THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS

Due process requires that notice be provided by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 US 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Vill., LLC v. Gen Electric,* 361 F.3d 566, 575 (9th Cir. 2004).  As described in the Nava Declaration, Notice was highly effective.

## VII.   ATTORNEY'S FEES

Federal Rule of Civil Procedure 23(h) provides that, [i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.  "Attorney's fees provisions included in a proposed class action agreement are, like every other aspect of such agreement, subject to a determination whether the settlement is "fundamentally fair, adequate and reasonable." *Staton v. Boeng Co*. 327 F.3d 938, 964 (9th Cir. 2003).

In "common fund" cases, a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. ***Id.***,, at 967 (*quoting ***Boeing Co. v. Van Gemert*** 444 US 472, 478 (1980). To determine the amount of the attorney's fees to be drawn from the fund, the district court may utilize the "percentage method," which awards the attorneys a percentage of the fund. ***Id.*** The 9th Circuit's "benchmark" for attorney's fees in common fund class action is 25% of the common fund. Selection of the benchmark, however, must be supported by findings that take into account all of the circumstances of the case. See ***Vizcaino v. Microsoft Corp.***, 290 F.3d 1043, 1048 (9th Cir. 2002). Circumstances include (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is at or above the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) a loadstar cross-check; and (7) reactions from the class. Id., at 1048-1052.

As stated in ***Vizcaino***, however, "the 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. As we said in *WPPSS,* in passing on post-settlement fee applications, "courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case. See ***Vizcaino, supra***

Here, Plaintiff's counsel took this case on a contingency, with all the associated risk that this entails, and an obligation to advance, at his own risk, the costs for the case. **Notably, the requested fee of 1/3 of the settlement was clearly laid out in the Class Notice, and there was no objection.** This is a very small law firm, with 2 lawyers, and yet we advanced nearly $20,000 in litigation costs in support of the case, with no guarantee that we would ever see that money again. That was

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

a substantial risk for a law office of this size. Plaintiff's counsel has worked on this case for over two years, with no payment, risking enormous efforts might amount to nothing if the case was dismissed or denied certification. Given the size of this firm, devoting this much time and resources to a single case prevented the firm from accepting cases that would have conflicted with our obligation to devote energies to this case. Moreover, plaintiff's counsel's contingency rate for similar cases is, at a minimum 33.3 percent for individual claims, and that is lower than the market rate for experienced employment lawyers in Los Angeles County. Finally, ***this case was filed in Los Angeles County*** Superior Court, and plaintiff's counsel has routinely been granted 33.3% of the common fund in similar wage and hour class actions due to contingent risk and the prevailing contingency rates for like work. The fact that Defendant removed the case to Federal Court should not substantially reduce the fee award that was likely to be granted in the Court where the case was filed. See Buchsbaum Decl. ¶50-51. The 33.3% is at or below the going rate in Los Angeles County for contingency wage and hour cases, and the results to the class, which include almost $300 for the average class member, and no objections to the settlement, warrant a fee award at this level. Plaintiff's counsel is also seeking reimbursement for verified and necessary costs amounting to $17,372.32, which include the mediation fee ($10,500), the complex filing fee ($1492.99), Expert Consulting Fees, and the remainder in miscellaneous filings and copying. The total costs are under the amount that was estimated in the Class Notice.

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND
PAGA ACTION SETTLEMENT

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of this class, collective, and representative action settlement.

Dated: November 20, 2025          LAW OFFICES OF BUCHSBAUM & HAAG
                                  A Limited Liability Partnership

                                  */s/ Brent S. Buchsbaum*

                                  By: _____
                                  Brent Buchsbaum, Attorney for Plaintiff

BUCHSBAUM & HAAG, LLP
100 OCEANGATE, SUITE 1200
LONG BEACH, CALIFORNIA 90802

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT